UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 9, 2017

LETTER TO COUNSEL

RE: *Michael Bruce Agent v. Commissioner, Social Security Administration*;
Civil No. SAG-17-24

Dear Counsel:

On January 5, 2017, Plaintiff Michael Bruce Agent petitioned this Court to review the Social Security Administration's final decision to deny his claims for benefits. [ECF No. 1]. I have considered the parties' cross-motions for summary judgment and Plaintiff's reply. [ECF Nos. 14, 18, 19]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Mr. Agent protectively filed claims for Supplemental Security Income ("SSI") on May 28, 2013, (Tr. 203-08), and Disability Insurance Benefits ("DIB") on May 29, 2013, (Tr. 201-02). He alleged a disability onset date of June 1, 2012. (Tr. 41, 201). His claims were denied initially and on reconsideration. (Tr. 65-71, 73-79, 81-87, 89-95). A hearing was held on July 6, 2016, before an Administrative Law Judge ("ALJ"). (Tr. 39-63). Following the hearing, the ALJ determined that Mr. Agent was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 22-33). The Appeals Council ("AC") denied Mr. Agent's request for further review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Agent suffered from the severe impairments of "migraine headaches; and depressive disorder not otherwise specified." (Tr. 24). Despite these impairments, the ALJ determined that Mr. Agent would retain the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot negotiate ladders, ropes, or scaffolding. He cannot interact with heights or dangerous machinery. He requires ten minutes of rest every two hours. He will be off task eight percent of the time, and will miss 11 days of work per year. He can occasionally interact with peers, the public, and supervisor.

(Tr. 27). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Agent could perform several jobs existing in the national economy and therefore was not disabled. (Tr. 31-32).

Mr. Agent raises three arguments on appeal: (1) that the ALJ failed to provide jobs at medium work that Mr. Agent could perform, given his limitations and advanced age; (2) that the ALJ improperly determined that Mr. Agent's back pain and right knee pain do not constitute severe impairments; and (3) that the ALJ improperly discarded Mr. Agent's treating physician's opinions without substantial evidence. Pl. Mot. Summ. J. 8-13. I agree that the ALJ's decision is not supported by substantial evidence, and I therefore remand the case. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Agent is not entitled to benefits is correct.

Beginning with the successful argument, Mr. Agent contends that the ALJ erred in determining that his back pain and right knee pain do not constitute severe impairments. Pl. Mot. 10-11. Specifically, Mr. Agent argues that the ALJ "has presented no evidence that Mr. Agent's impairments [of back pain and right knee pain] are nonsevere." *Id.* at 11. At step two of the sequential evaluation, the ALJ must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(c) (2012). An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a) (1985) (amended by 20 C.F.R. § 404.1522(a) (2017)). Notably, "[s]tep two does not present a high threshold to meet." *Albert v. Astrue*, CBD-10-2071, 2011 WL 341709, at *3 (D. Md. July 29, 2011). In light of this minimal threshold, the ALJ's "finding that an impairment is not severe enough to proceed to step three requires a careful analysis of the medical findings and an informed judgment about the impairment's limiting effect on an individual's physical and mental abilities to perform basic work activities." *Id.* (citing SSR 85-28, 1985 WL 56856 (1985)).

In the instant case, the ALJ did not properly evaluate whether Mr. Agent's back pain and right knee pain constituted severe impairments, because he failed to provide any meaningful analysis to support his conclusion. (Tr. 25). Most notably, the ALJ failed entirely to discuss the impact of Mr. Agent's back pain and right knee pain on his physical abilities, and failed to evaluate Mr. Agent's subjective assertions of disabling pain. *Cf. Shaffer v. Comm'r, Soc. Sec.*, SAG-10-1962, 2012 WL 707098, at *3 (D. Md. March 2, 2012) (holding that the ALJ provided adequate support for her finding that the claimant's Crohn's disease was not a severe impairment when the ALJ observed that "Claimant worked for many years with Crohn's disease and reported only occasional 'flares'") (citation omitted). Instead, the ALJ merely cited the objective medical evidence, noting an x-ray of the lumbar spine "show[ing] just a minimal retrolisthesis of L2 on L3," (Tr. 24), and an x-ray of the joint "show[ing] mild narrowing of the medical compartment," (Tr. 25). The ALJ also found that Mr. Agent's examinations were otherwise "normal" and "unremarkable," without providing substantial evidentiary support. (Tr. 24-25). Following his brief recitation, the ALJ made the conclusory finding that Mr. Agent's back pain and right knee pain do not impose "more than minimal restriction on his ability to perform work activities." *Id.* *See White v. Comm'r, Soc. Sec. Admin.*, SAG-16-506, 2017 WL 1102719, at *2 (D. Md. March 23, 2017) (holding that the ALJ erred by determining that the claimant's foot conditions were not

severe impairments when the "ALJ conclusorily stated that [the claimant's] 'foot conditions [do] not cause more than a minimal impact on her ability to perform basic work activities and are not severe'") (citation omitted). Finally, the ALJ included no discussion of Mr. Agent's back and knee pain in his RFC assessment, even assuming it is a non-severe impairment. *See* 20 C.F.R. § 404.1523. Accordingly, the ALJ failed to adequately evaluate Mr. Agent's back pain and right knee pain, and remand is therefore required.

Next, Social Security regulations provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8P (S.S.A.), 1996 WL 374184 (1996)). In doing so, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Here, the ALJ failed to provide an accurate and logical bridge between Mr. Agent's limitations and the RFC determination. Most significantly, in formulating the RFC assessment, the ALJ noted that Mr. Agent "will be off task eight percent of the time, and will miss 11 days of work per year." (Tr. 27). To support his conclusion, the ALJ found that Mr. Agent "has not demonstrated any deficits in attention or concentration during appointments, and he is able to perform activities like preparing simple meals, taking care of his ailing mother, renovating a house, and shopping, that require him to demonstrate good task persistence[.]" (Tr. 30). The ALJ, however, failed to explain how these findings translate into the conclusion that Mr. Agent would remain off task for eight percent of the day, rather than nine or ten percent, or that he would be absent exactly eleven days per year. An explanation of how that percentage was calculated is significant in the instant case, because a relatively small increase could preclude competitive employment. *See Schlossnagle v. Colvin*, Civil No. TMD 15-935, 2016 WL 4077672, at *4 (D. Md. Aug. 1, 2016) ("Being 'off task' more than 10% of the time during an eight-hour workday would preclude all competitive employment."). Without further explanation, I am unable to ascertain how the ALJ assessed Mr. Agent's percentage of time off task. On remand, the ALJ should consider the impact of Mr. Agent's limitations on the RFC determination and explain the reasons for that finding, citing substantial evidence.

Mr. Agent further contends that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. Kirtikant Desai. A treating physician's opinion is given controlling weight when two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and (2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590 (citation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6). I agree that the ALJ's evaluation of the medical opinions concerning Mr. Agent's impairments were cursory, at best. Notably, in trying to undermine Dr. Desai's opinions, the ALJ made multiple

references to Mr. Agent's statement that he was renovating his mother's house. *See* (Tr. 28, 29, 30). However, it remains unclear from the record whether, and to what extent, Mr. Agent was personally involved in the house renovations. *See* (Tr. 374) (stating only that Mr. Agent was "working on rehabbing deceased mother's home"). Although this deficiency might not warrant remand standing alone, because the case is being remanded on other grounds, the ALJ should evaluate Dr. Desai's opinions more thoroughly.

Turning to the less persuasive argument, Mr. Agent contends that the ALJ tried to circumvent the grids by stating he could perform jobs at any exertional level, yet only identifying light jobs. *Id.* at 8-10. At the fifth and last step of the sequential evaluation, the Commissioner "must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983) (citation omitted). To make this determination, the Commissioner may consider the regulations' grids, which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." *Id.* at 191-92. Social Security regulations, however, "provide that[,] where the claimant's impairment is nonexertional[,] . . . the grids' Rules are not conclusive, and full individualized consideration must be given to all relevant facts of the case." *Id.* at 192 (citation omitted). Essentially, in Mr. Agent's view, if he is only capable of light work, he would be deemed disabled under the grids.

In response, the Commissioner cites *Anderson v. Commissioner of Social Security*, 406 F. App'x 32 (6th Cir. 2010) (unpublished decision). In *Anderson*, the claimant argued that the "job descriptions offered by the VE were indicative of sedentary work, not light work [as provided in the claimant's RFC], and that as a result, the ALJ should have found that Anderson could perform only sedentary work." 406 F. App'x at 34 (citation omitted). The Sixth Circuit rejected this argument, concluding that "the VE's testimony depends upon the RFC and not the other way around." *Id.* at 36. *See also Foxworth v. Colvin*, 249 F. Supp. 3d 585, 589-90 (D. Mass. 2017) (concluding that the "RFC is determined prior to a vocational expert's testimony concerning nonexertional limitations and does not change because of it"). I concur with the reasoning in those decisions. A VE does not have to identify positions at the maximum exertional capacity in the RFC, so long as the jobs fall within the RFC assessment. Here, the ALJ posed a hypothetical that adequately set forth all of Mr. Agent's nonexertional limitations, *see* (Tr. 58, 60), and considered the VE's testimony that Mr. Agent could perform several jobs existing in the national economy to accommodate his RFC, (Tr. 58-61). *See Grant*, 699 F.2d at 192 (recognizing the Commissioner's burden to "produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy" in the presence of nonexertional impairments). Remand is therefore not warranted on this basis.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 14), is DENIED, and Defendant's Motion for Summary Judgment, (ECF No. 18), is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States Magistrate Judge